SOUTHWICK, P.J., for the court.
¶ 1. Joseph Tory was killed after leading officers of several Mississippi law enforcement agencies on a high-speed chase. Mary Tory, Joseph Tory’s sister, filed a wrongful death action against individual law enforcement officers and their respective agencies seeking $3,000,000 in dam *1247 ages. Summary judgment was granted to the defendants. Mary Tory appeals arguing that the circuit court erred in finding that Joseph Tory was involved in criminal activity that would, by statute, bar consideration of whether the officers’ behavior was reckless. We disagree and affirm.
STATEMENT OF FACTS
¶ 2. On the night of November 8, 1997, City of Edwards Police Officers Willie James Bishop and Willie Rozell were patrolling in a police cruiser. A vehicle driven by Joseph Tory, traveling in the direction opposite that of the officers, entered the officers’ lane of travel. Officer Bishop, who was driving the patrol car, was forced off of the road to avoid a head-on collision. Bishop turned his vehicle around and began to follow Tory. Both officers noted that taillights on Tory’s vehicle were inoperable. The officers turned on their blue lights and attempted to stop Tory. Their efforts were ignored as Tory drove through stop signs at several intersections. At one point the officers pulled alongside Tory, but he attempted to force the officers off the road. Ultimately, Bishop was able to pull ahead of Tory’s vehicle and force it to stop.
¶ 3. Bishop exited his car. Tory then accelerated towards him, requiring Bishop to dive across the back of his patrol car to escape injury. The officers again began to pursue Tory. They contacted the Hinds County Sheriffs Department for assistance. Tory entered onto Interstate 20 traveling east from Edwards towards Jackson. During pursuit, the officers observed Tory hit four other vehicles. Tory and his pursuers were traveling at eighty to ninety miles per hour.
¶ 4. Hinds County Sheriffs Deputy L.V. Myles joined with Officers Bishop and Ro-zell in pursuit. Deputy Myles took the lead position. After Myles joined the pursuit, Tory accelerated to approximately 110 miles per hour. Several miles distant, another deputy, Markas Marbury, was waiting on the side of Interstate 20 for Tory and the pursuing officers to reach his position. In the meantime, Deputy Mar-bury requested that the Clinton Police Department set up a “stinger tire deflation” device to stop Tory. Deputy Marbury pulled onto the highway when he saw the lights of the pursuing officers which he estimated to be approximately two miles west of his position.
¶ 5. When Deputy Marbury entered the interstate highway he was traveling between forty and fifty miles per hour in the left lane to divert traffic into the right lane. Deputy Marbury suddenly saw a car with one head light directly behind him. The car had veered out from behind an eighteen-wheeler traveling in the right lane and one hundred to two hundred yards behind the deputy. Deputy Mar-bury expected Tory to pass him on the right, but instead Tory rammed Marburjfs vehicle. Both Deputy Marbury’s and Tory’s vehicles left the highway. Deputy Marbury survived the collision. Tory’s vehicle struck a tree. Tory, who was not wearing a seatbelt, died from his injuries. A postmortem examination revealed that Tory’s blood alcohol content was .24%.
¶ 6. Mary Tory, the deceased’s sister, filed suit against the officers involved during the chase, their respective law enforcement agencies, the Hinds County Sheriff and the City of Edwards. On April 2, 1999, the Edwards Police Department, the Edwards Police Chief, and Officers Bishop and Rozell were dismissed. On September 1, 1999, an agreed order was entered dismissing, in their individual capacities only, Deputies L.V. Myles and Markas Mar-bury.
¶ 7. The circuit court granted the motions for summary judgment that were filed by the remaining defendants. The *1248 circuit court found that the Mississippi Tort Claims Act granted the defendants immunity because Tory was engaged in criminal activity. Miss.Code Ann. § 11-46-9(l)(c) (Supp.2001). Even had the officers acted recklessly in some way in responding to that lawless conduct, there can be no liability. Mary Tory appeals.
DISCUSSION
¶ 8. Summary judgment is a useful procedural tool for determining whether, based on the law applicable to the claims, any disputed factual matters exist that must be resolved by a trial. It is for the moving party to show both that there are no genuine issues of material fact, and that based on the undisputed facts, that it is entitled to judgment. Miller v. Meeks, 762 So.2d 302, 304 (Miss.2000).

1. Criminal Activity

¶ 9. The disputed statutory immunity is this:
A governmental entity and its employees acting within the courses and scope of their employment or duties shall not be liable for any claim ... [ajrising out of any act or omission if an employee of a governmental entity engaged in the performance or execution of duties or activities relating to the police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.
Miss.Code Ann. § 11-46-9(l)(c)(Supp.2001). If Tory’s refusal to pull over, his efforts to run law enforcement officers off the road, and his other conduct constituted “criminal activity,” then even reckless disregard of his safety by the officers who were responding to those crimes cannot be the basis for liability. Perhaps of equal importance, officers and the law enforcement agencies for which they work will not be put to the test of proving in court that their actions were not reckless.
¶ 10. Mary Tory argues that her brother was not engaged in criminal activity because Mississippi caselaw recognizes that mere traffic offenses are insufficient to invoke the immunity. After a review of the potential offenses involved, we will discuss those precedents. Mary Tory alleges that her brother had been involved in a mere traffic offense since there was evidence that at some point the officers noted that Tory’s vehicle did not have operating taillights, while other evidence revealed that the pursuit may have begun because of a lane violation. However, the “lane violation” occurred when Tory nearly collided with Officers Bishop and Rozell head-on. Tory argues that a jury question was created as to “what crime for which the chase began actually was.” These offenses are misdemeanor violations. Miss.Code Ann. §§ 63-7-7 (Rev.1996); 63-7-13(3) (Rev.1996); 63-3-201 (Rev.1996); and 63-3-601 (Rev.1996).
¶ 11. These are not the only criminal violations at issue. While the initial stop may have been grounded on minor traffic offenses, though very early on Tory nearly ran the officers off the road, it cannot be said that the high-speed chase was because of those offenses. Instead, after Tory was initially stopped, he then almost ran over one of the officers as he recommenced his flight. That is aggravated assault on a police officer. The various offenses revealed by the undisputed evidence are these: aggravated assault, Miss.Code Ann. § 97-3-7(a) (Rev.2000); speeding, Miss. Code Ann. § 63-3-201 and § 63-3-501 (Rev.1996); leaving the scene of an accident, Miss.Code Ann. § 63-3-403 (Rev. 1996); resisting arrest, Miss.Code Ann. § 97-9-73 (Rev.2000); reckless driving, Miss.Code Ann. § 63-3-1201 (Rev.1996); and driving under the influence, Miss.Code *1249 Ann. § 63-11-30 (Rev.1996). There maybe others.
¶ 12. We now turn to a statute and caselaw that discuss traffic offenses. One statute provides that a governmental “employee shall not be considered as acting within the course and scope of his employment and a government entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee’s conduct constituted ... any criminal offense other than traffic violations.” Miss.Code Ann. § 11-46-5 (Supp.2001) (emphasis added). This continuation of the governmental entity’s liability even if one of its employees committed a traffic offense (as opposed to a more serious crime, for which the governmental entity would not be hable) has no direct relevance to whether the entity has to prove that it was not reckless in responding to a third party’s traffic offenses. The Supreme Court has addressed these statutory issues.
¶ 13. The Supreme Court refused to apply the immunity to a case in which a City of Jackson police officer, while speeding on his way to dinner with fellow officers, struck a motorist. City of Jackson v. Perry, 764 So.2d 373, 377 (Miss.2000). The City argued that recovery was barred because Perry happened to be driving without a license. Perry, 764 So.2d at 378. The Court did not expressly accept or reject Perry’s argument. It stated that Perry had been “neither issued a citation for driving without a license nor charged with any crime.” Id. The Court also stated that driving without a license was not specifically designated as a crime by statute. Id. More importantly, it must “be shown that the criminal activity has some causal nexus to the wrongdoing of the tortfeasor.” Id. at 379. This is because the statute was “not designed to protect grossly negligent or intentional tortfeasors from liability where the fact that the victim is engaged in a criminal activity is merely fortuitous and has no relation to the transaction out of which liability would otherwise arise.” Id.
¶ 14. In a slightly more recent decision, the Supreme Court rejected the argument that “the Legislature did not intend to include all crimes, especially minor misdemeanors, within the construct of being ‘engaged in criminal activity’.... ” Bridges v. Pearl River Valley Water Supply Dist., 793 So.2d 584, 588 (Miss.2001). The Court, referring to its decision in Perry, stated that “[wjhile we have held that the criminal activity supporting this exemption [from civil liability] must be more than fortuitous, we have never suggested that such activity must rise to the level of a felony.” Bridges, 793 So.2d at 588. The Court also found that if “an officer has probable cause to arrest and proceeds to do so, there is the requisite nexus between criminal activity and the action causing injury.” Id.
¶ 15. After witnessing Tory’s commission of several criminal offenses, the officers were empowered to stop and arrest him. Miss.Code Ann. § 99-3-7(1) (Rev.2000). There was a “causal nexus” between Tory’s criminal activity and the actions of the officers in this case.

2. Reckless Disregard

¶ 16. Ms. Tory also argues that the trial judge erred by not making a finding as to whether the officers’ conduct was in reckless disregard for the safety of others. Mary Tory argues that if the officers acted recklessly as to any other motorist during the pursuit, that she could still recover despite Joseph Tory’s conduct. This reading of the statute would effectively remove the requirement that the individual bringing suit against a law enforcement officer not be involved in criminal activity at the time of injury. “The statute *1250 is designed to protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim.” Perry, 764 So.2d at 379. The trial judge need not have examined whether someone else, who had not tried to run over any officer or evade arrest, could, if injured, have a claim.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ„ CONCUR.